Michael K. Friedland (SBN 157,217)
michael.friedland@knobbe.com
Susan M. Natland (SBN 198,100)
susan.natland@knobbe.com
Lauren Keller Katzenellenbogen (SBN 223,370)
lauren.katzenellenbogen@knobbe.com
Nicole R. Townes (SBN 272,342)
nicole.townes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
FORTINET, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| FORTINET, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FORTANIX, INC, a Delaware corporation,<br><br>Defendant. | Case No. 3:20-cv-06900-MMC<br><br>Hon. Maxine M. Chesney<br><br>**[PROPOSED] JOINT PRETRIAL STATEMENT**<br><br>**PRETRIAL CONFERENCE:**<br>Date: June 7, 2022<br>Time: 2:30 p.m. via Zoom videoconference<br>Trial Date: June 20, 2022 |

I. **Substance of the Action**

 A. **Fortinet's Position**

More than 17 years after Fortinet began selling cybersecurity products and services with its FORTINET® mark, Fortanix began selling products and services also in the cybersecurity space with the confusingly similar FORTANIX mark. Fortanix's selection of the FORTANIX mark was a blatant attempt to ride on the coattails of well-known and established cybersecurity company, Fortinet.

Fortinet first began using the FORTINET® mark in connection with cybersecurity products and services in 2001. In the two decades since, Fortinet has expanded its family of marks to include additional FORTI-inclusive marks. Fortinet uses marks such as FORTICLOUD®, FORTIGATE®, FORTINAC™, and FORTICLIENT®, among many other FORTI-inclusive marks. Fortinet has also expanded its cybersecurity products and services and offers a wide range of network security, cloud security, and security operations solutions. Fortinet is a leader in the cybersecurity industry and is extremely well-known. Fortinet is a Standard & Poor 500 and NASDAQ 100 Index company. Fortinet earned more than $3.3 billion in revenue in 2021 and had more than 500,000 customers.

Defendant Fortanix, Inc. adopted the confusingly similar FORTANIX mark more than 17 years after Fortinet began offering cybersecurity products and services under the FORTINET® mark. Fortanix is still in the start-up phase but received funding from its partner, Intel, a company with $80 billion in revenue in 2021. Fortanix currently sells a multi-cloud security product under the FORTANIX mark. Like Fortinet, Fortanix markets its product and services to customers across a wide variety of industries. Fortanix admits that it sells its products and services to the same customers as Fortinet.

In this lawsuit, Fortinet has alleged claims for trademark infringement, false designation, unfair competition, and cancellation of Fortanix's federal trademark registration. To prove trademark infringement, Fortinet must show that it owns valid and protectable marks, and there is a likelihood of confusion between Fortinet's marks and the FORTANIX mark. Fortinet owns numerous federal trademark registrations for its FORTINET® and other FORTI-inclusive marks.

The *Sleekcraft* factors, considered by the Ninth Circuit in evaluating likelihood of confusion, establish a likelihood of confusion in this case.  The Court has already found that "a trier of fact reasonably could conclude five of the above-referenced factors weigh in favor of finding a likelihood of confusion, specifically, the strength of the mark, the proximity of the goods, the similarity of the marks, the existence of actual confusion, and the defendant's intent…."  Dkt. No. 80 at 10.  The first factor, the strength of the FORTINET® mark, weighs heavily in favor of confusion.  Fortinet owns incontestable trademark registrations and has extensively advertised and promoted the FORTINET® mark.  Fortinet invests over $45 million per year in marketing its brand. As the Court stated in its Order on Fortanix's Motion for Summary Judgment, "Fortinet has offered evidence from which a trier of fact could reasonably find its mark is strong."  Dkt. No. 80 at 5.

The second factor, similarity of the marks, weighs heavily in favor of a likelihood of confusion because the marks both consist of the identical prefix "FORT," followed by a similar-sounding vowel and then a three-letter word starting with the letter "n."

The third factor, similarity of the goods and services, and sixth factor, the parties' advertising channels, also weigh strongly in favor of a likelihood of confusion.  In addition to using a confusingly similar mark, the parties sell competing goods and services.  Like Fortinet, Fortanix similarly offers products and services in the cybersecurity space that operate within the cloud environment.  The parties also sell competing data security solutions.  Further, many of Fortinet's products and services are complementary to Fortanix's products and services.  As the Court has already stated, "both parties sell products used by customers to secure the customers' networks and data."  Dkt. No. 80 at 6.  The parties also market and sell their products in the same publications and at the same trade shows such as Gartner and Black Hat.

The fourth and fifth factors, actual confusion and Fortanix's intent, also weigh strongly in favor of a likelihood of confusion.  There has already been at least one documented instance of customer confusion, and such confusion will only grow as marketplace newcomer Fortanix continues to expand.  In the one documented instance of confusion, Fortanix took advantage of that confusion to sell its products and never pointed out to the customer that they had emailed the

Joint Pretrial Statement
Case No. 3:20-cv-06900

wrong company.  Further, Fortanix adopted its mark with full knowledge of Fortinet's existence and mark.  Thus, Fortanix has demonstrated an intent to take advantage of the confusion with Fortinet.

The seventh factor, consumers' degree of care, also weighs in favor of a likelihood of confusion.  Both parties sell their cybersecurity products and services to companies across all industries and offer solutions for data security issues.  Although Fortanix argues that its customers are sophisticated and exercise a high degree of care by purchasing its products through Fortanix's sales people, Fortanix also sells its products through sales avenues where purchasers do not exercise a high degree of care and may be very unsophisticated.  For example, both parties' products can be purchased by the click of button through online cloud marketplaces.  A consumer's purchasing decision in an online cloud marketplace setting can be made in the matter of minutes or even seconds.  There is no direct contact with Fortinet or Fortanix when the purchases are made in this manner.  Further, cybersecurity products and services are purchased by most companies connected to the Internet and the sophistication of the purchasers can greatly vary.  For example, both parties sell to small companies that are unsophisticated in dealing with cybersecurity issues.

Fortanix also ignores that there may be initial interest confusion which is actionable under the Lanham Act.  Even if a purchaser ultimately realizes that Fortanix and Fortinet are not affiliated or related, there can still be trademark infringement.

The eighth factor, product line expansion, also weighs strongly in favor of a likelihood of confusion because both parties continue to expand the goods and services they offer, and with that expansion the overlap in the parties' goods and services continues to increase.  Fortanix's growth from a start-up to a more mature company offering a wider range of products will further increase customer confusion.

Because the *Sleekcraft* factors weigh strongly in favor of a likelihood of confusion, the FORTANIX mark is infringing the FORTINET mark, and Fortanix is unfairly competing against Fortinet.  Fortinet also seeks cancellation of Fortanix's U.S. Trademark Registration No.

1   5,289,135 for the FORTANIX mark based on the likelihood of confusion with Fortinet's

2   FORTINET® mark.

3       Fortanix has asserted the affirmative defense of laches.  However, Fortinet brought this

4   lawsuit less than one year after learning of Fortanix and less than four years after the earliest date

5   that Fortinet could be charged with constructive knowledge (the date that Fortanix's trademark

6   registration issued).  Because Fortinet brought this action within the four-year analogous statute

7   of limitations for California trademark claims, Fortanix has the burden to overcome a strong

8   presumption that laches does not apply.  Fortanix cannot meet this burden.

9       **B. Fortanix's Position**

10      This case is about whether highly sophisticated consumers of costly cybersecurity

11   solutions are likely to confuse Fortinet and Fortanix—companies that engender fundamentally

12   different approaches to cybersecurity using fundamentally different technologies—simply

13   because they both begin with the letters F-O-R-T.

14      In order for Fortinet to succeed on any of its claims at trial, Fortinet must prove that

15   Fortanix's use of its trademark is likely to cause confusion in the minds of Fortinet's and/or

16   Fortanix's potential customers.  The question is not whether a member of the ordinary public is

17   likely to be confused, but whether there is a likelihood of confusion in the minds of the relevant

18   consuming public.  Likelihood of confusion requires that confusion be probable, not simply a

19   possibility.

20      The relevant consuming public in this case is made up of sophisticated IT professionals

21   whose jobs are to protect their organization's most valuable data and assets.  They typically

22   spend months evaluating cybersecurity solutions before purchasing them.  Fortanix's average

23   sales cycle is six months, and customers typically spend hundreds of thousands of dollars on a

24   solution.  Fortinet's own expert and Senior Director testified that the shortest sales cycle he had

25   been involved in at Fortinet was about three months, and that "a cybersecurity product is

26   generally not something that the purchaser is going to purchase on a whim."

27      Considering who Fortinet's and Fortanix's customers are and the purposes for which they

28   are buying Fortinet's and Fortanix's products, the likelihood of confusion is virtually non-

existent in this case. Indeed, after nine months of discovery, the *only* evidence of purported confusion that Fortinet can point to is a single e-mail in which a Fortanix customer, during a drawn-out conversation with Fortanix's sales team, mistakenly refers to "Fortinet" instead of Fortanix. Other than this single piece of evidence—which the Court described as "weak"— Fortinet cannot point to a single instance of actual confusion, even though Fortinet and Fortanix have now co-existed for more than five years. Moreover, even if Fortinet's "weak" evidence is found to be compelling enough to establish a single instance of actual confusion, Fortinet has not presented any evidence that this lone customer's alleged confusion damaged Fortinet in any way (*e.g.*, by causing the customer to mistakenly purchase Fortanix's products instead of buying from Fortinet). Taken as a whole, the *Sleekcraft* factors weigh strongly against a finding of a likelihood of confusion.

In addition, Fortinet's claims are barred by the doctrine of laches. Specifically, Fortanix will prove that it has been prejudiced by Fortinet's unreasonable delay in bringing suit. Fortanix will establish that Fortinet had constructive knowledge of Fortanix's mark beginning on September 19, 2017 but waited more than *three years* before bringing suit. In addition, Fortanix will present evidence allowing the factfinder to find that Fortinet likely knew of Fortanix much earlier than September 19, 2017—*i.e.*, that Fortinet waited as long as four years or more before filing this action.

## II. **Relief Requested**

### A. **Fortinet's Position**

Fortinet seeks damages for infringement of its FORTINET® mark in the form of an amount for corrective advertising. "In measuring harm to goodwill, a jury may consider a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts." *Skydive Arizona v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012); *see also HM Elecs v. R.F. Techs*, 2015 WL 1757804 at *3 (S.D. Cal. April 17, 2015) ("In a sense, advertising costs most accurately reflect trademark value: the more one advertises a mark, the more public recognition inures to the mark, which increases its value."). Fortinet will set forth evidence of its expenditures in building its business reputation in the form of the

substantial advertising expenditures that Fortinet has made promoting its brand.  Fortinet will also present evidence of harm to its mark resulting from Fortanix's infringement.

15 U.S.C. § 1117 also provides for treble damages for willful trademark infringement.  In addition, 15 U.S.C. § 1117 provides that Fortinet may be awarded its attorneys' fees if the case is exceptional.  Because Fortanix knew of Fortinet before selecting the FORTANIX mark and Fortanix continued to infringe even after receiving a cease and desist letter and after the filing of this lawsuit, this case is exceptional.  Fortinet will also be entitled to its attorneys' fees and costs.

Fortinet also seeks actual damages and punitive damages for Fortanix's unfair competition.  To obtain punitive damages against Fortanix under California common law, Fortinet must prove that Fortanix engaged in the unlawful conduct with malice, oppression, or fraud.  Because Fortanix knew of Fortinet before selecting the FORTANIX mark and Fortanix continued to infringe even after receiving a cease and desist letter and after the filing of this lawsuit, Fortanix has engaged in unlawful practices with malice.

In addition, Fortinet seeks cancellation of Fortanix's U.S. Trademark Registration No. 5,289,135 for the FORTANIX mark based on a likelihood of confusion.  Fortinet seeks a permanent injunction against Fortanix's use of the FORTANIX mark.  To obtain a permanent injunction, a plaintiff must satisfy four factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Under the Lanham Act, a plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation" of "any right of the registrant" of a registered mark or under 15 U.S.C. § 1125.  Fortinet will establish that there is a likelihood of confusion, and thus, Fortinet will be entitled to a presumption of irreparable harm.  Fortinet will prove that it has suffered a loss of its goodwill in the FORTINET mark that cannot be adequately compensated by monetary damages.  The balance of equities favors an injunction since Fortinet has invested significant time and money in building its valuable goodwill in its marks.  Further, the public interest will be served

1  by preventing confusion.

2  **B. Fortanix's Position**

3  There is <u>no factual dispute</u> that Fortinet has failed to present evidence of actual harm

4  resulting from Fortanix's alleged infringement.  Indeed, Fortinet's statement that it "will" present

5  such evidence at trial is an acknowledgement that it has not done so to date.  MSJ Order at 21

6  (citing ECF No. 53 at 25:3-5).  Evidence of (at *most*) a single instance of actual confusion is not

7  evidence of actual harm.  Fortinet must present evidence that this single instance of alleged

8  confusion affected someone's purchasing decisions or somehow impaired Fortinet's goodwill or

9  reputation.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989)

10  ("In a suit for damages under section 43(a) . . . actual evidence of some injury *resulting from the*

11  *deception* is an essential element of the plaintiff's case."); *Schutt Mfg. Co. v. Riddell, Inc.*, 673

12  F.2d 202, 206 (7th Cir. 1982) (while "[a] showing of a likelihood of confusion alone will suffice

13  to support a grant of injunctive relief . . . [a] higher standard of proof is required for the grant of

14  money damages");  *Mattel, Inc. v. MCA Recs., Inc.*, 28 F. Supp. 2d 1120, 1148 (C.D. Cal.

15  1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002) ("The fact that a plaintiff can point to some evidence

16  of confusion in the abstract does not automatically mean that such confusion affects actual

17  purchasing decisions.").  The record contains zero evidence to that effect.[1]

18  Fortinet's failure to present a single piece of evidence of actual harm significantly limits

19  the relief it is entitled to seek.  At most, Fortinet will be entitled to some form of injunctive relief

20  if, and only if, it can establish a likelihood of confusion.  On the other hand, Fortinet is not

21  entitled to an award of corrective advertising, because it has failed to identify any harm in need

22

23

24  [1] Fortinet's damages expert, in forming his opinion that Fortinet is entitled to an award of $4.4 million in corrective advertising costs, did nothing to determine whether Fortinet has actually

25  suffered any harm by virtue of Fortanix's alleged infringement.  Indeed, the expert freely admitted that his calculations were based on the "assumption" that Fortinet's trademark has been infringed.  But that assumption, on its own, is insufficient to support an award of corrective

26  advertising.  *See Harper House, Inc.*, 889 F.2d at 210 ("[A] competitor *need not prove injury* when suing to enjoin conduct that violates section 43(a) [of the Lanham Act]"); *Schutt Mfg. Co.*

27  *v. Riddell, Inc.*, 673 F.2d 202, 206 (7th Cir. 1982) ("A showing of a likelihood of confusion alone will suffice to support a grant of injunctive relief . . . A higher standard of proof is required

28  for the grant of money damages, however.").

Joint Pretrial Statement
Case No. 3:20-cv-06900

of correction.  It is not entitled to an award of punitive damages, because the record contains no evidence of "oppression, fraud, or malice"—let alone evidence that can support such a finding by "clear and convincing evidence."  Cal. Civ. Code. § 3294(a).  It is not entitled to an award of treble damages or attorneys' fees because, aside from Fortanix's "general awareness" of Fortinet's existence, the record contains no evidence that Fortanix selected the FORTANIX mark in bad faith or had any reason to believe that use of the FORTANIX mark was unlawful.  *See Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998) ("Infringement is not willful if the defendant 'might have reasonably thought that its proposed usage was not barred by the statute.'").  And it is not entitled to any relief under California's statutory unfair competition law, because it lacks standing to bring such a claim in the first place.  *See Coach, Inc. v. Citi Trends, Inc.*, 2019 WL 6354367, at \*11 (C.D. Cal. Oct. 23, 2019) (dismissing claim for lack of standing on a motion *in limine* because plaintiff "failed to adduce any evidence that they have lost money or property as a result of [defendant's] alleged conduct" and could "not cite to any" evidence that it "suffered harm to its goodwill" as a result of defendant's alleged infringement).

Because the Court found that a trier of fact could reasonably conclude that there is a likelihood of confusion, Fortinet is entitled to pursue its equitable remedies.  However, because Fortinet will not be able to establish such likelihood of confusion at trial, there is no irreparable harm that would support an injunction or cancellation of the FORTANIX Mark. In sum, Fortanix asserts that Fortinet is not entitled to any relief, monetary or equitable, let alone punitive damages or an exceptionality finding in its favor.

Fortanix asserts that Fortinet's prosecution of this case in the absence of a likelihood or actual confusion is exceptional, entitling Fortanix to an award of attorneys' fees and costs under 15 U.S.C. § 1117.

### III.   <u>Undisputed Facts</u>

1.    Fortinet is a Delaware corporation having a principal place of business at 899 Kifer Road, Sunnyvale, California 94086.

/ / /

2.      Fortanix is a Delaware corporation having a principal place of business at 800 West El Camino Real, Suite 180, Mountain View, California 94040.

3.      Fortinet has been using its FORTINET® mark in connection with cybersecurity products and services since 2001.

4.      Since 2001, Fortinet has expanded its family of marks to include additional FORTI-marks.

5.      Fortinet brands its cybersecurity products and services under an extensive list of FORTI-inclusive marks such as FORTIGATE®, FORTIOS®, FORTIADC, FORTIAI, FORTIAIOPS, FORTIANALYZER®, FORTIANTENNA, FORTIAP, FORTIAPCAM, FORTIASIC®, FORTIAUTHENTICATOR, FORTICACHE, FORTICALL, FORTICAM, FORTICAMERA, FORTICARE®, FORTICARRIER, FORTICASB, FORTICENTRAL, FORTICLIENT®, FORTICLOUD®, FORTICONNECT, FORTICONTROLLER, FORTICONVERTER, FORTICORE®, FORTICWP, FORTIDB, FORTIDDOS, FORTIDECEPTOR, FORTIDEPLOY, FORTIDEVSEC, FORTIEDGE, FORTIEDR, FORTIEXPLORER, FORTIEXTENDER, FORTIFIREWALL, FORTIFONE, FORTIGUARD®, FORTIGSLB, FORTIHYPERVISOR, FORTIINSIGHT, FORTIISOLATOR, FORTILAN, FORTILINK, FORTIMAIL®, FORTIMANAGER®, FORTIMOM, FORTIMONITOR, FORTINAC, FORTINDR, FORTIPENTEST, FORTIPHISH, FORTIPLANNER, FORTIPOLICY, FORTIPORTAL, FORTIPRESENCE, FORTIPROXY, FORTIRECORDER, FORTISANDBOX, FORTISASE, FORTISDNCONNECTOR, FORTISIEM, FORTISMS, FORTISOAR, FORTISWITCH, FORTITESTER, FORTITOKEN, FORTIVOICE, FORTIWAN, FORTIWEB, FORTIWIFI, FORTIWLC, FORTIWLM, and FORTIXDR.

6.      Fortinet owns the domain names <www.fortinet.com> , <www.fortiguard.com>, <www.fortimail.com> and <www.forticloud.com>

7.      Fortinet is the owner of U.S. Trademark Registration No. 4,285,497 for the mark FORTINET.  Fortinet filed the application for this registration on May 23, 2012, and the registration issued on February 5, 2013.  The registration lists a first use in commerce date of

1  February 1, 2001.

2      8.    Fortinet is the owner of U.S. Trademark Registration No. 2,659,631 for the mark

3  FORTINET. Fortinet filed the application for this registration on November 17, 2001, and the

4  registration issued on December 10, 2002.  The registration lists a first use in commerce date of

5  February 1, 2001.

6      9.    Fortinet is the owner of U.S. Trademark Registration No. 3,909,699 for the mark

7  FORTINET.  Fortinet filed the application for this registration on November 13, 2008, and the

8  registration issued on January 25, 2011.  The registration lists a first use in commerce date of

9  February 1, 2001.

10     10.    Fortinet is the owner of U.S. Trademark Registration No. 4,017,505 for the mark

11  **F⊙RTINET**.  Fortinet filed the application for this registration on November 13, 2008,

12  and the registration issued on August 30, 2011.  The registration lists a first use in commerce

13  date of February 1, 2001.

14     11.    Fortinet is the owner of U.S. Trademark Registration No. 3,719,256 for the mark

15  FORTICLIENT.  Fortinet filed the application for this registration on February 8, 2008, and the

16  registration issued on December 1, 2009.  The registration lists a first use in commerce date of

17  March 10, 2005.

18     12.    Fortinet is the owner of U.S. Trademark Registration No. 3,719,257 for the mark

19  FORTIANALYZER.  Fortinet filed the application for this registration on February 8, 2008, and

20  the registration issued on December 1, 2009.  The registration lists a first use in commerce date

21  of October 1, 2005.

22     13.    Fortinet is the owner of U.S. Trademark Registration No. 3,719,258 for the mark

23  FORTIMAIL.  Fortinet filed the application for this registration on February 8, 2008, and the

24  registration issued on December 1, 2009.  The registration lists a first use in commerce date of

25  December 1, 2004.

26     14.    Fortinet is the owner of U.S. Trademark Registration No. 3,719,259 for the mark

27  FORTIMANAGER.  Fortinet filed the application for this registration on February 8, 2008, and

28  the registration issued on December 1, 2009.  The registration lists a first use in commerce date

of March 10, 2005.

15.     Fortinet is the owner of U.S. Trademark Registration No. 3,638,959 for the mark FORTIGATE.  Fortinet filed the application for this registration on November 13, 2008, and the registration issued on June 16, 2009.  The registration lists a first use in commerce date of February 1, 2001.

16.     Fortinet is the owner of U.S. Trademark Registration No. 4,060,361 for the mark FORTIGUARD.  Fortinet filed the application for this registration on November 13, 2008, and the registration issued on November 22, 2011.  The registration lists a first use in commerce date of May 10, 2004.

17.     Fortinet is the owner of U.S. Trademark Registration No. 2,994,740 for the mark FORTIGUARD.  Fortinet filed the application for this registration on May 20, 2004, and the registration issued on September 13, 2005.  The registration lists a first use in commerce date of February 1, 2004.

18.     Fortinet is the owner of U.S. Trademark Registration No. 2,672,248 for the mark FORTIGATE.  Fortinet filed the application for this registration on November 17, 2001, and the registration issued on January 7, 2003.  The registration lists a first use in commerce date of February 1, 2001.

19.     Fortinet is the owner of U.S. Trademark Registration No. 4,210,566 for the mark FORTICARE.   Fortinet filed the application for this registration on July 1, 2010, and the registration issued on September 18, 2012.  The registration lists a first use in commerce date of March 2005.

20.     Fortinet is the owner of U.S. Trademark Registration No. 5,008,687 for the mark FORTICORE.  Fortinet filed the application for this registration on October 20, 2014, and the registration issued on July 26, 2016.  The registration lists a first use in commerce date of July 3, 2014.

21.     Fortinet is the owner of U.S. Trademark Registration No. 4,670,776 for the mark FORTIGUARD.  Fortinet filed the application for this registration on May 23, 2014, and the registration issued on January 13, 2015.  The registration lists a first use in commerce date of

May 10, 2004.

22.     Fortinet is the owner of U.S. Trademark Registration No. 4,771,772 for the mark FORTICLOUD.  Fortinet filed the application for this registration on August 28, 2014, and the registration issued on July 14, 2015.  The registration lists a first use in commerce date of 2011.

23.     Fortinet is the owner of U.S. Trademark Registration No. 5,777,216 for the mark FORTIOS.   Fortinet filed the application for this registration on May 18, 2018, and the registration issued on June 11, 2019.  The registration lists a first use in commerce date of 2002.

24.     Fortinet is the owner of U.S. Trademark Registration No. 5,777,216 for the mark FORTIASIC.   Fortinet filed the application for this registration on May 18, 2018, and the registration issued on June 11, 2021.   The registration lists a first use in commerce date of August 2002.

25.     Fortinet is a Standard & Poor 500 and NASDAQ 100 Index company.

26.     In 2009, Fortinet became a publicly traded company.

27.     In 2019, Fortinet's revenues were approximately $2.2 billion.

28.     In 2020, Fortinet earned more than $2.59 billion in revenue and more than 500,000 customers.

29.     During the four years ending December 31, 2020, Fortinet spent on average approximately $45-$57 million per year in advertising in the United States.

30.     Fortinet and its products and services have been featured in *Forbes*, *Network World*, *Security Magazine*, *Global Banking and Finance*, *Gartner*, *CRN*, *CSO Online*, *SecurityWeek*, *InfoSecurity Magazine*, *Industry Today*, and *The Wall Street Journal*.

31.     Fortanix obtained U.S. Trademark Registration No. 5,289,135 for the FORTANIX mark on September 19, 2017.

32.     In January 2019, Fortanix closed a $23 million Series B round of funding led by Intel Capital.

33.     Fortinet sent a cease-and-desist letter to Fortanix on March 12, 2020, demanding that Fortanix cease use of the FORTANIX mark.

34.     Fortinet filed this lawsuit on October 2, 2020.

## IV.   **Disputed Facts**

1.      The strength of Fortinet's FORTINET® and other FORTI-inclusive marks.

2.      The similarity of the products and services offered in connection with Fortinet's FORTINET® and other FORTI-inclusive marks and the products and services offered in connection with Fortanix's FORTANIX mark.

3.      The similarity of the FORTINET® and other FORTI-inclusive marks and the FORTANIX mark.

4.      The similarity of the marketing channels for Fortinet's products and services offered in connection with its FORTINET® and other FORTI-inclusive marks and Fortanix's products and services offered in connection with its FORTANIX mark.

5.      The degree of care exercised by purchasers of Fortinet's products and services offered in connection with its FORTINET® and other FORTI-inclusive marks and Fortanix's products and services offered in connection with its FORTANIX mark.

6.      When Fortinet first became aware of Fortanix.

7.      When Fortanix first began using its FORTANIX mark.

8.      The amount of damages that should be awarded to Fortinet if Fortanix infringed Fortinet's FORTINET® mark or unfairly competed with Fortinet, if any.

9.      Whether Fortanix's use of the FORTANIX mark was malicious, oppressive, or fraudulent, and if so, the amount of punitive damages that Fortanix should pay to Fortinet, if any.

## V.  **Disputed Legal Issues**

1.      Whether Fortanix has infringed Fortinet's federally registered FORTINET® mark.

2.      Whether Fortanix has infringed Fortinet's common law rights in its FORTINET mark.

3.      If Fortinet establishes that Fortanix infringed Fortinet's trademark, whether such infringement was willful.

4.      Whether Fortanix has unfairly competed with Fortinet by creating a likelihood of confusion through use of the FORTANIX mark.

Joint Pretrial Statement
Case No. 3:20-cv-06900

5.      If Fortinet establishes that Fortanix engaged in unfair competition, whether such acts were willful.

6.      Whether Fortanix's alleged acts of unfair competition constitute malice, fraud, or oppression.

7.      Whether Fortanix's U.S. Trademark Registration No. 5,289,135 should be cancelled.

8.      If Fortinet establishes trademark infringement or unfair competition, the amount of damages adequate to compensate Fortinet for infringement of its trademark or Fortanix's unfair competition, if any.

9.       If Fortinet establishes trademark infringement or unfair competition, whether the amount of damages should be enhanced based on a finding of willfulness.

10.     If Fortinet establishes trademark infringement or unfair competition, and establishes that Fortanix engaged in malicious, oppressive, or fraudulent acts, the amount of punitive damages to punish Fortanix for its wrongful conduct, if any.

11.     Whether Fortinet is entitled to an injunction.

12.     Whether Fortinet or Fortanix is entitled to its attorneys' fees and costs.

**VI.    Estimate of Trial Time**

The trial is estimated to take 5-7 days. Fortanix proposes that the trial be bifurcated into separate trials on the issues of liability and damages and will be filing a motion to that effect.   Fortinet opposes bifurcation of the issues of liability and damages.

**VII.   Settlement**

The parties participated in settlement conferences with Magistrate Judge Sallie Kim on October 1, 2021 and April 19, 2022.   The parties do not believe that further settlement discussions are likely to be productive.

///
///
///.

**VIII.   Witnesses to be Called.**

The parties have disclosed, and intend to call, the following witnesses, subject to the objections raised and briefed in motions in limine or any other objections that may be raised at trial. [2]

A.  *Fortinet*

| Witness | Substance of Testimony |
|---|---|
| Alex Samonte<br>Director of Technical Architecture at Fortinet<br>899 Kifer Road, Sunnyvale, California 94086<br>Contact through counsel | Mr. Samonte is expected to testify regarding Fortinet's trademarks, the selection and adoption of Fortinet's trademarks, Fortinet's use of its trademarks, Fortinet's products and services, Fortinet's sales, the similarities between Fortinet's marks and Fortanix's mark, the strength of Fortinet's marks, Fortinet's enforcement of its trademarks, the relatedness of the goods and services offered by Fortinet and Fortanix, the marketing channels used by Fortinet and Fortanix, the degree of care exercised by consumers of Fortinet's and Fortanix's goods and services, Fortinet's awareness of Fortanix, and Fortinet's likelihood of market expansion. |
| Jaime Romero<br>Vice President of Corporate Marketing at Fortinet<br>899 Kifer Road, Sunnyvale, California 94086<br>Contact through counsel | Mr. Romero is expected to testify regarding Fortinet's trademarks, Fortinet's use of its trademarks, the marketing and promotion of goods and services under Fortinet's marks, the strength of Fortinet's marks, the marketing channels used by Fortinet, the harm to Fortinet's brand as a result of Fortanix's infringement, and a potential corrective advertising campaign and associated costs. |
| Vincent Hwang<br>Senior Director, Product and Solutions at Fortinet<br>899 Kifer Road, Sunnyvale, California 94086<br>Contact through counsel | Mr. Hwang is expected to provide expert testimony regarding the non-segmented nature of the cybersecurity market, how Fortinet and Fortanix are competitors, how Fortinet's and Fortanix's technologies overlap, how consumers in this space can be unsophisticated and do not always exercise |

---

[2] The parties have represented that they "anticipate" that all witnesses on both sides will be available to testify live at trial. In the event that a witness unexpectedly becomes unavailable, both parties reserve the right to submit deposition designations in lieu of live testimony. If either party submits deposition designations, the opposing party reserves to submit counter-designations and objections.  Because all witnesses are currently anticipated to testify live, Fortanix believes submission of deposition designations at this time is unnecessary.

| Witness | Substance of Testimony |
| --- | --- |
| | a high degree of care and discernment in purchasing cybersecurity products and services, and how even sophisticated customers do not always exercise a high degree of care in purchasing such products and services. |
| David Hanson<br>Lit.Econ LLP<br>100 W. Broadway, Suite 203<br>Long Beach, California 90802<br>Contact through counsel | Mr. Hanson is expected to provide expert testimony regarding damages and corrective advertising. |
| Anand Kashyap<br>Chief Technology Officer and Co-Founder<br>Fortanix<br>800 West El Camino Real, Suite 180<br>Mountain View, CA 94040 | Mr. Kashyap is expected to provide testimony regarding Fortanix's first use of its trademark, Fortanix's revenues, Fortanix's limited sales prior to 2020, his knowledge of Fortinet and the FORTINET® mark, and instances of actual confusion. |
| Ambuj Kumar<br>Chief Executive Office and Co-Founder<br>Fortanix<br>800 West El Camino Real, Suite 180<br>Mountain View, CA 94040 | Mr. Kumar is expected to provide testimony regarding Fortanix's first use of its trademark, Fortanix's revenues, Fortanix's limited sales prior to 2020, his knowledge of Fortinet and the FORTINET® mark, and instances of actual confusion. |
| David Greene<br>Former Chief Revenue Officer<br>Fortanix | Mr. Greene is expected to provide testimony regarding Fortanix's limited advertising expenditures prior to 2020. |

Fortinet also incorporates by reference the witnesses disclosed by Fortanix in its witness list below, and expressly reserve the right to call Fortanix's witnesses during its case-in-chief.

B.  *Fortanix*

Fortanix intends to cross-examine each of Fortinet's disclosed witnesses.  In addition, to the extent Fortinet does not elicit testimony from its respective witnesses on certain topics, then Fortanix intends to call those witnesses and ask them to testify on the topics described below:

/ / /

/ / /

/ / /

Joint Pretrial Statement
Case No. 3:20-cv-06900

| Witness | Substance of Testimony |
|---|---|
| Alex Samonte<br>Director of Technical Architecture at Fortinet<br>899 Kifer Road, Sunnyvale, California 94086<br>Contact through counsel | Fortinet's products and services and Fortanix's products and services. |
| Jaime Romero<br>Vice President of Corporate Marketing at Fortinet<br>899 Kifer Road, Sunnyvale, California 94086<br>Contact through counsel | Fortinet's enforcement of its own trademarks, and Fortinet's discovery of Fortanix. |
| Vincent Hwang<br>Senior Director, Product and Solutions at Fortinet<br>899 Kifer Road, Sunnyvale, California 94086<br>Contact through counsel | Fortinet's products and services, Mr. Hwang's knowledge of Fortanix's products and services, the sophistication and degree of care exercised by consumers of cybersecurity products, including but not limited to the sophistication and degree of care exercised by Fortinet's and Fortanix's potential customers, Mr. Hwang's methodology in forming his opinions, and the data upon which Mr. Hwang formed his opinions. |
| David Hanson<br>Lit.Econ LLP<br>100 W. Broadway, Suite 203<br>Long Beach, California 90802<br>Contact through counsel | Testimony regarding damages and corrective advertising, Mr. Hanson's methodology in forming his opinions, the data upon which Mr. Hanson formed his opinions, Mr. Hanson's opinions in similar cases. |
| Anand Kashyap<br>Chief Technology Officer and Co-Founder<br>Fortanix<br>800 West El Camino Real, Suite 180<br>Mountain View, CA 94040 | Fortanix's selection and use of its trademark, Fortanix's technology and business, the existence or absence of instances of actual confusion. |
| Ambuj Kumar<br>Chief Executive Office and Co-Founder<br>Fortanix<br>800 West El Camino Real, Suite 180<br>Mountain View, CA 94040 | Fortanix's selection and use of its trademark, Fortanix's technology and business, the existence or absence of instances of actual confusion. |
| David Greene | The highly segmented nature of the |

| Witness | Substance of Testimony |
|---------|------------------------|
| Former Chief Revenue Officer Fortanix | cybersecurity market and how Fortinet and Fortanix are not direct competitors; how Fortinet's and Fortanix's technologies and approaches to cybersecurity are fundamentally different; the sophistication and degree of care exercised by consumers of cybersecurity products, including but not limited to the sophistication and degree of care exercised by Fortinet's and Fortanix's potential customers. |

Respectfully submitted,

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

Dated:  May 23, 2022           By: */s/ Nicole R. Townes*
                                                   Nicole R. Townes
                                                   Michael K. Friedland
                                                   Susan M. Natland
                                                   Lauren Keller Katzenellenbogen
                                                   Nicole R. Townes

                                                   Attorneys for Plaintiff,
                                                   FORTINET, INC.


                                              **JAYARAM LAW, INC.**

Dated:  May 23, 2022           By: */s/ Vivek Javaram*
                                                   Vivek Jayaram
                                                   Palak Patel
                                                   Liz Austermuehle

                                            **MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP**
                                                   Rick Chang

                                                   Attorneys for Defendant,
                                                   FORTANIX, INC.

## __ATTESTATION__

I, Nicole R. Townes, am the ECF user whose user ID and password authorized the filing of this Document. Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have concurred in this filing.

_/s/ Nicole R. Townes_
Nicole R. Townes

Joint Pretrial Statement
Case No. 3:20-cv-06900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF CM/ECF SERVICE**</u>

I hereby certify that on May 23, 2022, I caused the **[PROPOSED] JOINT PRETRIAL STATEMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all attorneys of record.

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on May 23, 2022, at Irvine, California.

*/s/ Claudia Watson* _____
Claudia Watson

Joint Pretrial Statement
Case No. 3:20-cv-06900